UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **PARAMOUNT PICTURES CORPORATION,** § § § | |
| Plaintiff, § | |
| v. § | **CIVIL ACTION NO. H-04-03488** |
| § | |
| **JOHNSON BROADCASTING INC,** § § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

Pending before the Court are Defendant's Motion for Summary Judgment on Liability for Antitrust Violation (Doc. # 21) and Plaintiff's Cross-Motion for Summary Judgment (Doc. # 26). For the following reasons, Defendant's motion is **DENIED**, and Plaintiff's motion is **DENIED IN PART** and **GRANTED IN PART**.

This case arises from agreements in which Plaintiff licensed Defendant to broadcast the television programs *Judge Judy*, *Judge Joe Brown*, *Becker*, and *The Parkers* in the Houston area. Plaintiff filed this suit against Defendant for breach of contract, alleging that Defendant failed to make payments for *Judge Joe Brown*, *Becker*, and *The Parkers*, and that Defendant failed to broadcast *Becker* and *The Parkers*, as required under the license agreements. In response, Defendant has alleged that Plaintiff violated antitrust laws by illegally tying or "block-booking" the programs. Specifically, Defendant claims that Plaintiff conditioned its licensing of *Judge Judy* and *Judge Joe Brown* on Defendant's entering into a license agreement for *Becker*.

### I. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law, based on

the evidence thus far presented. *See* Fed. R. Civ. P. 56(c). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (citations omitted). If the moving party shows that there is a lack of evidence to support the nonmoving party's case, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.* (quotation omitted). The nonmovant cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). Evidence is construed in the light most favorable to the non-moving party. *Kee*, 247 F.3d at 210.

## II. Defendant's Antitrust Claim

Tying arrangements, which are prohibited under the Sherman Act and the Clayton Act, occur when a seller agrees to sell one product only on the condition that the buyer also purchases a different, or "tied," product. *Northern Pac. R.R. Co. v. United States*, 356 U.S. 1, 5-6 (1958); *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1048 n.5 (5th Cir. 1982).[1] Block-booking is a type of tying arrangement in which a distributor licenses one film or group of films to exhibitors on the condition that the exhibitor will also license another film or group of films released by the distributor. *United States v. Paramount Pictures, Inc.*, 334 U.S. 131, 156 (1948); *Pape Television Co. v. Assoc. Artists Prod. Corp.*, 277 F.2d 750, 752-53 (5th Cir. 1960). While conditioning the sale of one product on the sale of another violates

---

[1] Defendant has also brought its antitrust claim under Tex. Bus. & Com. Code § 15.05(a) and (b). Because Texas's antitrust laws mirror the Sherman Act, courts have recognized the appropriateness of relying on federal case law in examining state antitrust claims. Accordingly, it is not necessary to discuss Defendant's state claims separately. *See, e.g.*, *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 687 (Tex. 1990).

antitrust laws, selling multiple products as a package is permissible. *Paramount*, 334 U.S. at 159 ("We do not suggest that films may not be sold in blocks or groups, when there is no requirement, express or implied, for the purchase of more than one film. All we hold to be illegal is a refusal to license one or more copyrights unless another copyright is accepted.").

Having considered the parties' opposing motions for summary judgment on Defendant's antitrust defense and counterclaim, the Court finds and holds that there is a genuine issue of material fact as to whether Plaintiff expressly conditioned its licenses of *Judge Judy* and *Judge Joe Brown* on Defendant's additionally entering into a license agreement for *Becker*, or whether Plaintiff simply licensed the three programs together in order to allow Defendant to obtain the lower pricing that it desired for *Judge Judy* and *Judge Joe Brown*.[2]

Plaintiff has presented evidence that, prior to entering into the license agreements, the parties negotiated for the licensing of *Judge Judy* and *Judge Joe Brown* alone, and that Plaintiff offered to license the two programs to Defendant for a fee similar to that paid for the programs by another television network. Richard Golden, Paramount Vice President, Regional Southwest Manager, Dep. 15:4-12, 19:5-6, Sept. 16, 2005. Defendant countered with a lower offer for the two programs, and the parties reached an impasse. *Id.* at 19:6-18. Plaintiff asserts that it suggested licensing *Becker* as a way for Defendant to obtain licenses to *Judge Judy* and *Judge Joe Brown* at a lower price, and that Plaintiff was never unwilling to license *Judge Judy* and *Judge Joe Brown* separately at some price. *See id.* at 19:22-23:12; 102:7-104:5.

---

[2] Plaintiff urges that Defendant has failed to establish all of the elements of a *per se* illegal tying violation, which include that: (1) there are two separate products; (2) the two products are tied together or customers are coerced; (3) the supplier possesses substantial economic power over the tying product; (4) the tie has an anticompetitive effect on the tied market; and (5) the tie affects a not insubstantial volume of commerce. *United Farmers Agents Ass'n v. Farmers Ins. Exch.*, 89 F.3d 233, 236 n.2 (5th Cir. 1996). While not deciding that Defendant has proved elements (1), (3), (4), or (5), the Court finds that Defendant has presented sufficient evidence to withstand a summary judgment for Plaintiff on its antitrust claim.

On the contrary, Defendant urges that Plaintiff's admission that it was unwilling to license *Judge Judy* and *Judge Joe Brown* at the lower price without Defendant also agreeing to enter into a contract for *Becker* is proof of illegal block-booking. This argument misses the mark, as it is perfectly acceptable for a distributor to negotiate a lower price for programs bought as part of a package, so long as it does not refuse to license the programs separately, albeit at a higher price. *See Paramount*, 334 U.S. at 159. However, Defendant has also produced the testimony of Douglas Johnson, its President, that "Golden said that if [Defendant] wanted *Judge Judy* and *Judge Joe* that [it] had to sign a contract for *Becker*." Johnson Aff. ¶ 6. Johnson similarly testified in his deposition that "at that point in time [Defendant] had to do a deal with all three in order to get what [it] wanted, which was Judge Judy and Joe Brown." Johnson Dep. 128:10-12, Aug. 24, 2005. Though it is strongly contradicted by Plaintiff's evidence, Johnson's testimony raises a genuine factual issue as to whether, at the time that the parties entered into the agreements, Plaintiff conditioned the licenses of *Judge Judy* and *Judge Joe Brown* on Defendant's entering into a licensing agreement for *Becker*.

Plaintiff also argues that Defendant's antitrust claim fails because of language in the licensing agreements providing that the programs were separately negotiated and agreed upon.[3] This argument fails as a matter of law. While Plaintiff is correct that a contract should be interpreted in a manner that is consistent with its provisions, parties may not transform illegal contracts into legal ones simply by including contractual provisions stating that the illegality did not occur. Instead, where a written contract is alleged to reflect circumstances different from

---

[3] Both the *Judge Judy* and *Judge Joe Brown* license agreements provide that:
> Licensee acknowledges that the licensing of the Picture(s) specified in this Agreement has been separately negotiated and severally agreed upon; that the prices set forth herein represent fair value for the Picture(s); that Paramount did not directly or indirectly condition the granting of the license of any one or more of the Picture(s) upon Licensee agreeing to license any other series or picture(s); and that the licensing hereunder of more than one Picture is for the convenience of both Paramount and Licensee.

Pl.'s Ex. A ¶ 9; Pl.'s Ex. B ¶ 9.

those that actually occurred, so as to conceal illegality, a court should look beyond the language of the contract and consider evidence showing that the contract embodies an illegal agreement. *See, e.g.*, *Cook's Bryan, Inc. v. State*, 459 S.W.2d 682, 687 (Tex. App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.); *Lewis & Queen v. N.M. Ball Sons*, 308 P.2d 713, 717-18 (Cal. 1957). Here, Defendant has presented evidence that, despite any contractual language to the contrary, Plaintiff illegally tied its license of *Becker* to the licenses of *Judge Judy* and *Judge Joe Brown*. Plaintiff cannot nullify such an antitrust violation with a contractual provision. Because a genuine issue of fact exists as to whether Plaintiff conditioned its licenses of *Judge Judy* and *Judge Joe Brown* on Defendant's additionally entering into a license agreement for *Becker*, or whether Plaintiff simply licensed the programs together as part of a pricing negotiation, summary judgment for either party on Defendant's antitrust claim is inappropriate.

### III. Plaintiff's Breach of Contract Claims

*A. Antitrust Defense*

Defendant argues that, if its antitrust claim is found to be meritorious, then the *Judge Joe Brown* and *Becker* license agreements will necessarily be illegal and unenforceable. Although courts generally refuse to enforce contracts that are violative of the law, the Supreme Court and the Fifth Circuit have found that an antitrust violation does not automatically render a contract unenforceable. Specifically, a court should decline to enforce a contract only when doing so "would itself be enforcing the precise conduct made unlawful by the (antitrust law)." *Kaiser*, 677 F.2d at 1060 (quoting *Kelly v. Kosuga*, 358 U.S. 516, 520 (1959)). Conversely, "[i]f the contract provisions (sought to be enforced) do not embody or further anti-competitive practices, then there has been no irreparable loss or damage from a violation of the anti-trust law," and a

court should not refuse to enforce the contract.  *Kaiser*, 677 F.2d at 1060 (quoting *Response of Carolina v. Leasco Response, Inc.*, 498 F.2d 314, 319 (5th Cir. 1974)).

In *Kaiser*, the Fifth Circuit applied these principles and held that an antitrust defense of illegal tying was inapplicable in a suit for the price of change-work under a contract for allegedly tied products.  *Kaiser*, 677 F.2d at 1060-61.  Noting that the plaintiff "does not seek to enforce the tie-in by suing a party who has received the desired tying product and now refuses to accept the tied product," the court found that the change work was an "intelligible economic transaction in itself."  *Id.* at 1060 (quoting *Kelly*, 358 U.S. at 521).  The court reached a similar conclusion in *Carpa, Inc. v. Ward Foods, Inc.*, opining that:

> Plaintiffs received tangible items from one who possessed title to the goods, and the law presumes the expectation of paying a reasonable price for them.  Simply stated, one should not be able to get something for nothing.  The Sherman Act provides the proper remedy of treble damages for any injury incurred in carrying out this policy.

536 F.2d 39, 55 (5th Cir. 1976); *see also Abercrombie v. Lum's, Inc.*, 531 F.2d 775, 779 (5th Cir. 1976) (holding that, because the plaintiffs had used leased premises, and since requiring the plaintiffs to make fixed rental payments would not amount to enforcement of the conduct prohibited by antitrust laws, these laws provided no basis for enjoining the collection of the rental payments).

To put it another way, where a court is able to enforce contractual provisions without fostering anticompetitive conduct, the remedy for an antitrust violation should consist of that provided by the antitrust statutes, and not the additional reward of the court's refusal to enforce an otherwise valid contract.  As the Supreme Court has stated:

> [W]hen the contract sued upon is not intrinsically illegal, the Court has refused to allow property to be obtained under a contract of sale without enforcing the duty to pay for it because of violations of the Sherman Act not inhering in the particular contract in suit and has reaffirmed the doctrine that where the statute

6

>creates a new offense and denounces the penalty, or gives a new right and declares the remedy, the punishment or the remedy can be only that which the statute prescribes.

*Bruce's Juices v. Am. Can Co.*, 330 U.S. 743, 755 (1947) (quotations omitted); *see also Kelly*, 358 U.S. at 519 (finding that "the Sherman Act's express remedies could not be added to judicially by including the avoidance of private contracts as a sanction").

Here, the gravamen of Defendant's antitrust claim is that Plaintiff forced it to enter into a contract for *Becker* in order to obtain the license to the *Judge Joe Brown* program that Defendant so desired. Under these circumstances, *Becker* was the allegedly tied product. Defendant admits and even emphasizes that it wished to obtain the license for *Judge Joe Brown*. While Defendant seems to assume that both the *Judge Joe Brown* and *Becker* contracts embody the alleged antitrust violation, the facts before the Court show that the license agreement for the broadcast of *Judge Joe Brown* was an independent contract that Defendant itself pursued. It is Plaintiff's alleged tying of the additional license agreement for *Becker* that constitutes the antitrust violation of which Defendant complains. Consequently, were Defendant's antitrust claim found to be proper, the Court could not enforce the terms of the *Becker* agreement without furthering allegedly anti-competitive practices. Given the independence of and Defendant's desire for the *Judge Joe Brown* license, however, this Court can enforce the payment terms of the *Judge Joe Brown* license agreement without giving effect to the alleged tie-in of *Becker* or otherwise furthering conduct made unlawful by the Sherman or Clayton Acts. It would be unfair and unnecessary for this Court to augment the penalties imposed by the antitrust statutes by allowing Defendant to reap the benefit of the license that it desired and utilized without fulfilling its contractual duty to pay for it.[4]

---

[4] Defendant may separately recover damages for its antitrust counterclaim.

Accordingly, the Court finds that, if Defendant's antitrust claim is found to be meritorious, this will constitute a defense to Plaintiff's breach of contract claims only as to the license agreement for *Becker*. The *Judge Joe Brown* license agreement can be enforced even in light of the alleged antitrust violation. Similarly, as Plaintiff correctly points out, Defendant has not asserted that the license agreement for *The Parkers* was illegally tied to the license for any other program. The Court will therefore proceed to analyze whether Plaintiff is entitled to summary judgment on its claims that Defendant breached the license agreements for *Judge Joe Brown* and *The Parkers*.

Before reaching Plaintiff's claims for breach of the *Judge Joe Brown* and *The Parkers* contracts, the Court notes that Defendant does assert that Plaintiff "tied distribution of all shows to barter advertising." Def.'s Answer ¶ 22. Under the license agreements, Defendant agreed to provide Plaintiff with a certain amount of advertising time per episode of each program, which would allow Plaintiff to sell that time to national advertisers. Barter advertising time is routinely provided as full or partial consideration for licensing syndicated programming. *See* Johnson Dep. 47:5-49:19. Defendant has failed to offer any evidence or argument as to how this constitutes a violation of the antitrust laws. On the contrary, it would appear that the barter advertising time falls squarely outside the conduct prohibited by the antitrust statutes, which ban the tying of one *product* to another *product*. *See, e.g.*, *United Farmers Agents Ass'n*, 89 F.3d at 236 n.2. The Court agrees with Plaintiff that barter advertising time is not a product in this context, and Defendant has pointed to no facts or law to the contrary. Plaintiff did not force Defendant to buy the barter advertising time from it in order to secure another product; but rather, the barter advertising time was part of the consideration that Defendant agreed to furnish to Plaintiff in exchange for the licenses. Thus, the barter advertising time constituted a payment

rather than a purchase of a product. Moreover, Defendant has failed to offer any evidence that Plaintiff conditioned its licenses on the inclusion of barter advertising time; that is, that Plaintiff was unwilling to license the programs at any price without the barter advertising time. Defendant has therefore failed to support its contention that the barter advertising time provisions somehow violated the antitrust statutes, and any such assertion is not a bar to Plaintiff's breach of contract claims.

*B. Breach of Contract*

Plaintiff alleges that Defendant failed fully to pay the license fees owed to Plaintiff for *Judge Joe Brown* and *The Parkers* and failed to adhere to the broadcast terms of the license agreement for *The Parkers*.[5] In order to establish a claim for breach of contract, a plaintiff must show: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant, and (4) resulting damages to the plaintiff. *Reichert v. Gen. Ins. Co. of Am.*, 442 P.2d 377, 381 (Cal. 1968); *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, no pet. h.).[6] In order to create a valid contract, there must be consideration provided by both parties, as well as the mutual assent of the parties to enter into the transaction. *Davies v. Krasna*, 54 Cal. Rptr. 37, 45 (Cal. Ct. App. 1966); *Kelly v. Rio Grande Computerland Group*, 128 S.W.3d 759, 767 (Tex. App.—El Paso 2004, no pet.). Here, Plaintiff has shown that consideration was provided for the *Judge Joe Brown* and *The Parkers* contracts by both of the parties – by Plaintiff in the form of the program licenses provided to Defendant, and by Defendant in the form of license fees and barter advertising time

---

[5] Though the Court does not reach Plaintiff's breach of contract claim for *Becker* because of disputed factual issues as to Defendant's antitrust defense, the Court's analysis of Plaintiff's breach of contract claims and Defendant's breach of contract defenses for *Judge Joe Brown* and *The Parkers* would likely also apply to the *Becker* license agreement.

[6] Plaintiff asserts that the license agreements contain a choice-of-law clause favoring California law. Defendant has not rebutted this. The Court need not decide whether California's or Texas's substantive law applies, however, since the law governing breach of contract claims is the same for both states.

provided to Plaintiff. Plaintiff has also shown that the parties mutually assented to the contract terms, as demonstrated by their signatures on the license agreements. Pl.'s Exs. B, D.

While Defendant does not offer any evidence to dispute this, Defendant asserts that the consideration for the license of *The Parkers* "has failed in whole or in part," because Plaintiff failed to disclose both its knowledge of the impending cancellation of the program and its knowledge that *The Parkers* would be broadcast on BET, a Viacom basic cable company, in Houston. Def.'s Answer ¶ 31. Defendant has failed to offer any evidence that Plaintiff knew at the time that it entered into the license agreement that cancellation of *The Parkers* was imminent, or that Plaintiff had a duty to disclose such knowledge to Defendant. Defendant has also failed to offer any evidence that Plaintiff knew at the time that it entered the contract that it would permit *The Parkers* to be broadcast on BET, or that Plaintiff had a duty to disclose this to Defendant. Rather, the license agreement's terms and conditions explicitly contemplate both of these occurrences, and provide that "[t]here is no guarantee of any particular number of Episodes to be produced or number of Network broadcast seasons," and that Defendant's licensing of *The Parkers* "shall be non-exclusive against national basic cable television services and superstation services," such as BET. Pl.'s Ex. D ¶¶ 9.A, 9.E. As Plaintiff correctly points out, a contract must be enforced such that none of its terms will be rendered meaningless. *See Kavruck v. Blue Cross of Cal.*, 134 Cal. Rptr. 2d 152, 159 (Cal. Ct. App. 2003); *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). In accepting the terms of the license agreement, Defendant accepted the possibility that *The Parkers* might be cancelled during the license term or that the program might be broadcast on a basic cable network such as BET. Absent evidence that Plaintiff had knowledge that these events would occur, and that Plaintiff had a duty to disclose this to Defendant, Defendant's claim that consideration failed is without merit.

Having found that the license agreements for *Judge Joe Brown* and *The Parkers* were valid contracts, exhibiting both consideration and mutual assent, the Court turns to the remaining elements of Plaintiff's breach of contract claim. As Plaintiff correctly asserts, it is undisputed that Plaintiff performed under the *Judge Joe Brown* and *The Parkers* license agreements by delivering the episodes of the programs to Defendant. Defendant's breach of the contracts is also undisputed, as Defendant has offered no evidence contesting its failure to pay the remaining balances owed on both of the license agreements or its failure to broadcast *The Parkers* for the duration of the license period. Finally, Defendant does not dispute that Plaintiff suffered damages as a result of these breaches, being deprived of the remaining license fees for *Judge Joe Brown* and *The Parkers*, and losing barter advertising time for *The Parkers*.

Defendant, however, raises several other defenses to Plaintiff's breach of contract claims. First, Defendant argues that Plaintiff had a duty to mitigate its damages by licensing the programs to other stations in the Houston area, and that Plaintiff failed to do so. This defense is relevant to *The Parkers*, which Defendant ceased broadcasting before the end of its license period. While contract law recognizes a duty to mitigate damages, there is no evidence that Plaintiff has failed to do so here. Rather, Plaintiff indicates that after Defendant ceased broadcasting *The Parkers*, Plaintiff re-licensed the program to another station. Golden Dep. 60:15-61:3. At a hearing before this Court on December 15, 2005, the parties agreed that discovery relating to Plaintiff's re-licensing of the programs to other stations was not yet complete, and these facts are not before the Court at this time. As Plaintiff's re-licensing of *The Parkers* is relevant to the harm Plaintiff suffered from Defendant's breach of the license agreement, the Court will defer ruling on the amount of damages to which Plaintiff is entitled until this and other issues relevant to damages are more fully developed by the parties.

11

Additionally, Defendant asserts that Plaintiff terminated the license agreement for *The Parkers* by letter dated February 21, 2005, and that, because Plaintiff elected to terminate the contract, it is not entitled to collect amounts due for programming past the termination date. Plaintiff concedes that, in light of Defendant's refusal to continue broadcasting *The Parkers*, it terminated the license agreement and ceased delivering episodes of the program to Defendant. Plaintiff correctly notes, however, that Defendant's breach of the license agreement by its refusal to broadcast *The Parkers* excused Plaintiff's continued performance under the contract, and that Plaintiff was entitled to terminate its contract with Defendant and re-license the program. *See Holderby v. Int'l Union of Operating Eng'rs, Local Union No. 12*, 291 P.2d 463, 469 (Cal. 1955); *Barnett v. Coppell N. Tex. Court, Ltd.*, 123 S.W.3d 804, 815 (Tex. App.—Dallas 2003, pet. denied). Indeed, Defendant implicitly recognizes Plaintiff's ability to do this by arguing that Plaintiff had a duty to mitigate damages by re-licensing the program to another station. Rather than barring Plaintiff from collecting any damages for amounts due past the termination date, Plaintiff's termination and re-licensing of *The Parkers* goes to the amount of damages to which Plaintiff is entitled, as discussed above.

Finally, Defendant claims that the acceleration clause in the license agreement for *The Parkers* is unenforceable as an unreasonable penalty. The Terms and Conditions of the agreement for *The Parkers* provide that:

> If Licensee shall default in the payment of any sums payable in accordance with the terms of this Agreement, . . . or if Licensee shall fail to duly perform or observe any other term, covenant or condition of this Agreement, . . . the entire unpaid balance of all license fees payable under this Agreement shall immediately become due and payable to Paramount, regardless of the due date thereof . . . .

Pl.'s Ex. D ¶ 12. Contrary to Defendant's argument, not all acceleration clauses are void as unreasonable penalties. Rather, a party seeking to invalidate an acceleration clause must show

how the particular clause was unreasonable in light of the circumstances existing at the time the contract was made. *See Weber, Lipshie & Co. v. Christian*, 60 Cal. Rptr. 2d 677, 681 (Cal. Ct. App. 1997) (discussing the validity of damages provisions in the context of liquidated damages); *see also Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 435 (Tex. App.—Dallas 2004, pet. denied) (recognizing the general rule that "parties are bound by their agreed-to measure of damages for a breach of contract," and that "[a]n acceleration clause, as the agreed-to measure of damages, does not contain an unlawful penalty unless it requires unearned interest to be collected").

Defendant argues that "an acceleration clause is an unreasonable penalty because it makes 100 percent of all future amounts due immediately, without any discount to present value and without credit for mitigation as required by law." Def.'s Reply Br. ¶ 25. Defendant has failed to support this contention either with relevant law or by the facts of this case.[7] As discussed previously, Plaintiff attempted to mitigate damages by licensing *The Parkers* to another station, which will be taken into account in determining the amount of damages to which Plaintiff is entitled. Plaintiff is not seeking to recover from Defendants amounts that it was able to recover by re-licensing the programs. If Defendant believes that damages should be further discounted to reflect their present value, Defendant may argue this claim when the Court later takes up the issue of damages. Additionally, although the acceleration clause is located in the Terms and Conditions of the license agreement for *The Parkers*, the page of the agreement that Defendant signed states that "[t]he Agreement shall be subject to all provisions contained in Paramount's Standard Terms and Conditions, which are expressly incorporated herein by

---

[7] The cases cited by Defendant are not applicable, as they deal with acceleration clauses or liquidated damages clauses in the context of leases for real property or other types of contracts that, in California, are subject to statutory rules for determining the validity of damages clauses. *See, e.g.*, *Ricker v. Rombough*, 261 P.2d 328, 329-30 (Cal. App. Dep't Super. Ct. 1953); Cal. Civ. Code § 1670-1671.

13

reference." Pl.'s Ex. D.  Defendant has failed to show that the acceleration clause constituted an unreasonable penalty, and Plaintiff may therefore collect damages pursuant to this provision.

Plaintiff has demonstrated all the elements necessary for its breach of contract claim, and Defendant has failed to raise any genuine issue of material fact in defense.  Summary judgment for Plaintiff as to Defendant's breach of the *Judge Joe Brown* and *The Parkers* license agreements is appropriate.

## IV. Conclusion

Defendant's motion for summary judgment on its antitrust claim is **DENIED**.  Plaintiff's motion for summary judgment as to Defendant's antitrust claim and as to Plaintiff's breach of contract claim for the *Becker* license agreement is likewise **DENIED**.  Plaintiff's motion for summary judgment on its breach of contract claims for the *Judge Joe Brown* and *The Parkers* license agreements is **GRANTED**.  The Court defers judgment on the issue of damages.

**IT IS SO ORDERED**.

**SIGNED** this 15th day of February, 2006.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**