# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **PARAMOUNT PICTURES** | § | |
| **CORPORATION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO. H-04-03488** |
| | § | |
| **JOHNSON BROADCASTING INC,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiff Paramount Pictures Corporation's ("Paramount") Motion for Summary Judgment on the Issue of Market Power (Docket # 54).  For the following reasons, the motion is **DENIED**.

## I. Background

This case involves both Paramount's claims that Defendant Johnson Broadcasting Inc. ("Johnson") breached its license agreements for the television programs *Judge Joe Brown*, *Becker*, and *The Parkers*, and Johnson's claims that Paramount violated antitrust laws by illegally tying licenses for *Judge Judy* and *Judge Joe Brown* to the license for *Becker*.  In an Order dated February 15, 2006, the Court granted summary judgment for Paramount on its breach of contract claims as to the *Judge Joe Brown* and *The Parkers* license agreements, and on May 19, 2006, the Court granted summary judgment for Paramount on the issue of damages arising from these claims.  Whether Paramount violated antitrust laws by committing illegal tying, and, if so, whether this constitutes a defense to Paramount's breach of contract claim for *Becker*, remain to be decided.  Paramount has moved for summary judgment on Johnson's antitrust claim, asserting that Johnson has not made the necessary showing that Paramount possessed substantial economic power in the market for *Judge Judy* and *Judge Joe Brown*.

**II. Elements of Johnson's Antitrust Claim**

In order to establish a per se illegal tying arrangement, Johnson must show that:  (1) there were two separate products; (2) the two products were tied together or customers were coerced; (3) the supplier possessed substantial economic power over the tying product; (4) the tie had an anticompetitive effect on the tied market; and (5) the tie affected a not insubstantial volume of commerce.  *United Farmers Agents Ass'n v. Farmers Ins. Exch.*, 89 F.3d 233, 236 n.2 (5th Cir. 1996).   As Paramount points out, the Supreme Court recently overturned the longstanding presumption of market power that had attached to patented or copyrighted products, holding that "in all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product."  *Illinois Tool Works Inc. v. Independent Ink, Inc.*, 126 S.Ct. 1281, 1293 (2006).   Although the tying claims at issue in *Illinois Tool* involved patented products, rather than copyrighted products, the Supreme Court gave no indication that its holding should be limited to patented products.   The Court instead found that market power must be proven "in all cases involving a tying arrangement."  *Id.*   In order to withstand summary judgment on its antitrust claim, Johnson must therefore make a showing of Paramount's market power in the tying product; in this case, the programs *Judge Judy* and *Judge Joe Brown*.

Market power is present when "a party has sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product." *Northern Pac. RR. v. United States*, 356 U.S. 1, 6 (1958).   To show that Paramount had such power, Johnson must demonstrate that the tying product and the tied product belonged to two, distinct markets, and it must define the parameters of each of these markets.  *See Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 21 (1984) ("[A] tying arrangement cannot exist unless two separate product markets have been linked.").   With respect to Paramount's power in the market for the tying product, Johnson must show that it had no reasonable substitute

programs available to it, such that it had little choice but to license *Judge Judy* and *Judge Joe Brown* from Paramount. *Id.* at 38 n.7 (O'Connor, J., concurring) (noting that there is "no market power in any relevant sense if there are close substitutes for the [tying] product"); *see also United States Steel Corp. v. Fortner Enters., Inc.* 429 U.S. 610, 620 (1977) (finding that the question of market power is determined by "whether the seller has some advantage not shared by his competitors in the market for the tying product").

## III. Johnson's Showing of Market Power

Johnson has presented sufficient evidence of Paramount's market power to withstand summary judgment on its antitrust claim. First, Johnson submits the report of its expert witness, Craig T. Schulman, Ph.D. Dr. Schulman defines the relevant market for the tying product, the programs *Judge Judy* and *Judge Joe Brown*, by identifying all programs that consumers would deem to be reasonable substitutes. Schulman Report ¶ 12. This determination, of what constitutes a reasonable substitute, depends on three factors: (1) the product's geographic availability; (2) whether the product is available at a particular point in time; and (3) the basic characteristics of the product. *Id.* According to Dr. Schulman, in order be considered a reasonable substitute, a program must have been available for licensing by Houston stations for the 2002/2003 season, as were *Judge Judy* and *Judge Joe Brown*. *Id.* ¶ 14. For this reason, *Becker*, which was not available for syndicated broadcasting until the 2003/2004 season, would not be a reasonable substitute, and would not be included in the market for *Judge Judy* and *Judge Joe Brown*. *Id.* Similarly, Dr. Schulman explains that, to be considered a reasonable substitute, a program must actually have been available for licensing by Johnson on its station, KNWS, and not already exclusively licensed for broadcast on another Houston station. *Id.* ¶ 15.

In addition to a program's availability to Johnson for the 2002/2003 season, Dr. Schulman looks at characteristics such as genre and quality in his determination of reasonable

3

substitutes. *Id.* ¶ 16. With respect to genre, Dr. Schulman explains that only programs that are suitable for broadcast five days per week, like *Judge Judy* and *Judge Joe Brown*, should be considered reasonable substitutes. *Id.* ¶ 17. Weekend programs would thus not be reasonable substitutes. *Id.* With respect to quality, Dr. Schulman opines that only programs with high ratings, similar to those of *Judge Judy* and *Judge Joe Brown*, should be designated as reasonable substitutes. *Id.* ¶ 18.

Applying these various criteria, Dr. Schulman looks at the one hundred highest-rated, syndicated television programs in 2002/2003, in addition to other programs identified by Paramount's expert witness, Dr. Keith R. Ugone, Ph.D. *Id.* ¶ 20. Finding that these programs either were not available for broadcast by Johnson for the 2002/2003 season, or that their ratings were too low to make them reasonable substitutes,[1] Dr. Schulman concludes that there were no reasonable substitute programs for *Judge Judy* and *Judge Joe Brown* for the 2002/2003 season. *Id.* ¶¶ 21-22. Accordingly, Dr. Schulman opines that these two programs alone comprise the relevant market for the tying product. *Id.* ¶ 24.

Along with Dr. Schulman's report, Johnson has produced the testimony of its President, Doug Johnson, regarding the availability of syndicated programs for broadcast on Johnson's station, KNWS. With respect to the programs identified by Dr. Ugone, Mr. Johnson has testified that the only programs available to KNWS were programs that he already licensed, with two exceptions. Johnson Decl. ¶ 5. Both of these exceptions were weekend sports programs, which were not reasonable substitutes for weekday programs like *Judge Judy* and *Judge Joe Brown*. *Id.* Thus, aside from the programs which Johnson actually licensed, no other programs were available to KNWS for the 2002/2003 season. *Id.*

[1] For the programs that were not already licensed in the Houston market for the 2002/2003 season, Dr. Schulman notes that, not only were their ratings too low to qualify them as reasonable substitutes, but they were also not offered to Johnson for the 2002/2003 season. Schulman Report ¶ 22. Dr. Schulman further remarks that "there is some question as to whether these programs were even in syndication at the time." *Id.*

Paramount has responded to Johnson's evidence of market power, both by attacking Dr. Schulman's method of determining reasonable substitutes to be included in the market for the tying product, and with the testimony of its own expert, Dr. Ugone.  Paramount first identifies a number of flaws in Johnson's definition of the market for the tying product, contending, for example, that Dr. Schulman has failed to address fundamental concepts, such as reasonable interchangeability, elasticity, and cross-elasticity.  While Dr. Schulman may not use these particular terms or discuss the costs associated with the market for the tying product, however, his analysis of reasonable substitutes explains in detail why only certain programs should be included in the market.  This analysis, while it may be subject to various criticisms, is sufficient to withstand a summary judgment of no market power.

Paramount also asserts that Dr. Schulman's examination of program quality is inappropriate.  *See, e.g.*, *Murrow Furniture Galleries, Inc. v. Thomasville Furniture Indus., Inc.*, 889 F.2d 524, 528 (4th Cir. 1989) (holding that a market definition based on "quality, price, and reputation . . . is difficult to maintain" because "the relevant product market is defined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it") (internal quotation omitted).  While a market definition based on quality may be problematic, however, Paramount has not produced any authority for the proposition that quality is never a permissible consideration in defining a product market.  Moreover, Dr. Schulman's definition of the relevant market is not solely dependent on his analysis of quality.  Instead, he considers a number of factors in defining the market and notes that, of those programs that could be excluded from the market on the basis of low quality, all were likely unavailable to Johnson for the 2002/2003 season, as well.  Schulman Report ¶ 22.

Finally, Paramount points to Dr. Ugone's expert opinion that Johnson's licensing of other programs to take the place of *Judge Judy* and *Judge Joe Brown* indicates that other syndicated

5

programs were reasonable substitutes.   Ugone Report ¶¶ 18-19.   As Paramount asserts, Dr. Ugone considers various types of substitute programming, including different types of syndicated programming and substitution within demographic groups, and concludes that the relevant market for the tying product should not be limited to the programs *Judge Judy* and *Judge Joe Brown*.  *Id.* ¶¶ 20-21.  Contrary to Paramount's assertions, however, the contradictions between Dr. Ugone's and Dr. Schulman's conclusions do not demonstrate that Johnson cannot make a sufficient showing of market power.   Rather, the disagreement between the parties' experts demonstrates a genuine issue of material fact, which precludes the Court from granting summary judgment as to this issue.   Paramount may attack flaws in Dr. Schulman's testimony through cross-examination and through the testimony of Dr. Ugone.   Summary judgment would be inappropriate, however, and Paramount's Motion for Summary Judgment on the Issue of Market Power is **DENIED**.

> **IT IS SO ORDERED**.

> **SIGNED** this 22nd day of May, 2006.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT**